IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Robert D. Brooks, | ) | |
| | ) | No. 6:18-cv-00632-MBS-KFM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| David Dunlap, Warden of Kershaw Correctional | ) | |
| Institution, | ) | |
| Edward Bittinger, Hearing Officer at Kershaw | ) | |
| Correctional Institution, | ) | |
| FNU Faulkenberry, Ms Offender Management | ) | |
| System Analyst, and | ) | |
| Dottie Stonebreaker, Associate Warden, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Robert D. Brooks, proceeding *pro se* and *in forma pauperis*, brought the underlying action pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights to due process, arising from events that took place while Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Kershaw Correctional Institution ("KCI"). Plaintiff also asserts claims for false imprisonment and conspiracy arising from the same events. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Kevin F. McDonald for pretrial handling.

## BACKGROUND

On March 3, 2016, while in SCDC custody, Plaintiff was transferred from Manning Correctional Institution to KCI. As part of the transfer, prison staff at Manning Correctional Institution inventoried certain personal property belonging to Plaintiff, including his box of legal papers. ECF No. 1 at 4. Plaintiff alleges that Officer Osborn, while taking inventory of the legal box, noticed and commented that someone had tampered with the contents of the box. Plaintiff

alleges he asked Officer Osborn "to make a notation of it and Officer Osborn said 'he would.'" *Id.* Following Plaintiff's arrival at KCI, prison staff inventoried Plaintiff's property and accused him of having a cell phone and charger in his belongings in violation of SCDC policy. Plaintiff was thereafter notified of a disciplinary hearing to be held before disciplinary hearing officer Defendant Edward Bittinger. Plaintiff alleges he requested that Officer Osborn be called to testify on his behalf and that Defendant Bittinger improperly denied the request. Plaintiff asserts that under SCDC policy, if an employee has been called as a witness and has information that is relevant to the case, the employee is obligated to provide the relevant information. ECF No. 1 at 5. Plaintiff was convicted of Possession of Any Communication Device (898), SCDC Policy OP-22.14, and Defendant Bittinger imposed as a sanction 60 days of disciplinary detention and the loss of 480 days of good time credits. The sanction was memorialized in SCDC Form 19-69, also known as a disciplinary report and hearing record. Plaintiff alleges that Defendant Bittinger withheld the disciplinary report and hearing record in an attempt to interfere with Plaintiff's ability to appeal the conviction. *Id.* at 5. Plaintiff asserts that at the time Defendant Bittinger imposed the sanctions, Plaintiff had acquired 522 days of good time credit and was 110 days from his projected max-out date.

In addition, Plaintiff alleges that Defendant David Dunlap, the warden at KCI, did not sign the disciplinary report and hearing record, and that Defendants Donnie Stonebreaker, the associate warden,[1] and Amy Faulkenberry, an offender management system analyst, relied on the unsigned report and record to enforce the disciplinary sanctions, in contravention of SCDC policy. ECF No. 1 at 6. Plaintiff asserts that under SCDC policy, upon receipt of a disciplinary report and hearing record, "when the inmate is found guilty, the warden or his/her designee at the institution

---

[1] Defendant Stonebreaker is incorrectly named in the complaint as Dottie.

where the inmate is housed may approve hearing results, overturn a guilty finding, or reduce the sanction of the hearing officer." *Id.* Plaintiff alleges that Defendant Stonebreaker noticed that the disciplinary report and hearing record were not signed, but placed Plaintiff in the restrictive housing unit anyway. *Id.* Plaintiff asserts that by this act Defendant Stonebreaker "conspired with the 'illegal placement' of [Plaintiff] in [KCI] restricted housing unit which constitutes 'false imprisonment.'" *Id.* Plaintiff alleges that Defendant Faulkenberry entered the sanction into the SCDC offender management system despite the fact that the disciplinary report and hearing record were not signed and that, in doing so, Defendant Faulkenberry violated his right to due process and is liable for false imprisonment and civil conspiracy. *Id.* at 7. Plaintiff filed step one and step two grievances regarding the disciplinary hearing and resulting sanctions, which Defendant Dunlap denied. In denying the grievances, Defendant Dunlap stated that the issues Plaintiff complained of "do not warrant a reversal of the charge; no technicalities, procedural errors, or misinterpretation of evidence was noted." *Id.* at 8. Plaintiff asserts that Defendant Dunlap thereby conspired "to deprive the Plaintiff of his constitutional rights . . . ." *Id.*

Plaintiff ultimately appealed the conviction to the Administrative Law Court. On September 28, 2016, SCDC moved to remand the matter on the basis that Plaintiff's conviction had been overturned due to errors in the disciplinary hearing process, and the appeal was dismissed. SCDC restored the good time credits, and Plaintiff was released from prison on September 28, 2016.

Plaintiff alleges that the denial of a fair disciplinary hearing and the resulting loss of good time credits impacted his release date and caused him to remain in SCDC custody 89 extra days. Plaintiff sues Defendants Dunlap, Bittinger, Faulkenberry, and Stonebreaker (collectively,

"Defendants") in their individual capacity.[2]  ECF No. 1 at 3.  He seeks relief in the form of monetary compensation for the extra 89 days he alleges he was improperly held in SCDC custody. ECF No. 1 at 15.

Defendants filed an answer on May 18, 2018.  ECF No. 22.  Plaintiff thereafter filed a motion for summary judgment.  ECF No. 39.  On August 16, 2018, Defendants filed a motion for summary judgment and supporting memorandum, to which they attached the following evidence: the transcript of the disciplinary hearing; copies of Plaintiff's step one and step two grievances; documents associated with Plaintiff's appeal to the Administrative Law Court; Defendants' discovery requests; and the affidavit of SCDC Branch Chief of Records Management and Release Section, Michael Stobbe.  ECF Nos. 46, 46-1 through 46-9.  On September 26, 2018, Plaintiff filed a response to Defendants' motion for summary judgment, to which he attached several exhibits duplicative of the documents attached to Defendants' motion.  ECF Nos. 52, 52-1 through 52-7. On October 11, 2018, Plaintiff filed a supplemental response to Defendants' motion.  ECF No. 54. Following his review of the briefing, the Magistrate Judge filed a Report and Recommendation ("Report") recommending that Plaintiff's motion for summary judgment be denied, ECF No. 42; he also filed a Report recommending that Defendants' motion for summary judgment be granted as to Defendants Faulkenberry and Stonebreaker and denied as to Defendants Dunlap and Bittinger, ECF No. 55.  Plaintiff filed an objection to the Report pertaining to his motion, ECF No. 44, and all parties filed objections to the Report pertaining to Defendants' motion, ECF Nos. 62, 63.

---

[2] Plaintiff named as defendants KCI and SCDC, which the court dismissed on June 1, 2018. ECF No. 27.

**STANDARD OF REVIEW**

## I.    Magistrate Judge's Findings

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight and the responsibility for making a final determination remains with the court.  *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The court reviews de novo only those portions of a Magistrate Judge's report and recommendation to which specific objections are filed and reviews those portions to which there are no objections—including those portions to which only "general and conclusory" objections have been made—for clear error.  *Diamond v. Colonial Life and Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 77 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## II.    Federal Rule of Civil Procedure 56

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Defendants as the moving parties initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict

for the nonmoving party. *Newport News Holding Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The nonmoving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## III.    Pleadings filed by *Pro se* Litigants

Plaintiff is appearing *pro se*, and thus is entitled to a liberal construction of his complaint. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). *Accord Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (instructing courts to hold the pleadings and other papers of *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers."). However, a district court may not rewrite a complaint to "conjure up questions never squarely presented," *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985), nor may the court ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 397 (4th Cir. 1990).

**DISCUSSION**

I.     **Magistrate Judge's Report and the Parties' Objections**

A.     **Plaintiff's Motion for Summary Judgment**

The Magistrate Judge recommends that Plaintiff's motion for summary judgment be denied because the motion appears to be less a substantive request for relief on the claims Plaintiff asserts, and more a "pre-emptive effort to deny the defendants summary judgment." ECF No. 42 at 3. The Magistrate Judge noted that, at the time Plaintiff filed his motion, Defendants had not yet moved for summary judgment. The Magistrate Judge further noted that Plaintiff does not contend there is no genuine dispute as to any material fact so as to merit summary judgment in his favor. The Magistrate Judge concluded that, "[a]s there remains genuine issues of material fact, the plaintiff's motion for summary judgment should be denied," and advised that "[s]hould the defendants file a motion for summary judgment, the plaintiff will have the opportunity to file a response." *Id.*

Plaintiff does not raise a specific objection to the Report; rather, he reiterates the allegations set forth in his complaint and reasserts a request that the court enter summary judgment in his favor. Because Plaintiff fails to assert a specific objection, the court reviews the Report for clear error. *Diamond*, 416 F.3d at 315; Fed. R. Civ. P. 72(b).

Plaintiff's motion for summary judgment consists of one page, ECF No. 39, and appears to concede that genuine issues of material fact exist: "[t]his legitimate opposition is being constructed in a diligent effort to illuminate genuine/material facts, in an evidentiary hearing if need be, that would obstruct this court from granting the Defendants a summary judgment in the captioned case." *Id.* The motion does not reference or introduce evidence; and, rather than set forth a basis for the entry of judgment, the motion appears to merely contest Defendants' answer denying the allegations. The court agrees with the Magistrate Judge's finding that Plaintiff has

not carried his burden under Rule 56(a).  Accordingly, the court overrules Plaintiff's objection and adopts the Magistrate Judge's recommendation that Plaintiff's motion for summary judgment be denied.

**B.**      **Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants note that Plaintiff bears the burden of proving his claims, and contend that Plaintiff cannot prevail on those claims because he has not produced any evidence in support of his allegations.  ECF No. 46-1 at 7.  Defendants additionally argue that Plaintiff asserts only general allegations of wrongdoing and fails to specify how the individual Defendants were personally involved in the alleged constitutional violation, false imprisonment, and civil conspiracy.  *Id.* at 10.  As to the specific claims, Defendants argue that Plaintiff cannot prove violation of his Fourteenth Amendment rights because "SCDC's dismissal of Plaintiff's disciplinary conviction and subsequent reinstatement of his good credits is demonstrative of his receipt of due process," *id.*; and, in any event, prison officials enjoy discretion to deny requests for witness testimony "where legitimate penological interests justif[y] excluding a witness," *id.* at 13.  Defendants assert that "Defendant Bittinger considered Plaintiff's request [to have Officer Osborn testify] but found that it was redundant evidence already in the record that did not justify transporting an SCDC officer away from his work," and, "t[h]us, in essence, legitimate penological interests warranted Defendant Bittinger's denying the request."  *Id.*  With respect to the claim for false imprisonment, Defendants assert that Plaintiff must demonstrate his liberty was restrained without legal process, and argue that Plaintiff cannot make such a showing because he "was an inmate at SCDC when disciplinary charges were brought against him."  Moreover, they assert, "it is clear that Plaintiff received due process as required under [law]."  *Id.* at 14.  Defendants further contend that they are entitled to qualified immunity.  Finally, Defendants

argue that because they "have shown that all federal claims alleged are without merit," the court should decline to exercise supplemental jurisdiction over any claims it construes as arising under state law. *Id.* at 16.

The Magistrate Judge recommends that Defendants' motion for summary judgment be granted as to Defendants Stonebreaker and Faulkenberry and denied as to Defendants Bittinger and Dunlap. ECF No. 55. With respect to Defendants Stonebreaker and Faulkenberry, the Magistrate Judge found:

> Ms. Faulkenberry is alleged to have entered the plaintiff's sanction into the SCDC offender management system, while Associate Warden Stonebreaker is alleged to have placed the plaintiff in the restricted housing unit in accordance with the Disciplinary Report and Hearing Record's sanction of 60 days disciplinary detention, despite the document purportedly being unsigned (doc. 1, p. 6). The plaintiff has failed to show that either of these defendants violated his constitutional rights by engaging in the normal functions and responsibilities of their respective jobs. Ms. Faulkenberry merely performed an administrative task of recording the results of the disciplinary hearing, while Associate Warden Stonebreaker likewise duly enforced the reported sanction of disciplinary detention. Neither played a role in arriving at the sanction, and their ministerial actions do not amount to due process violations or false imprisonment.

*Id.* at 6. The Magistrate Judge determined that because Plaintiff's allegations "fail to demonstrate that the defendants Faulkenberry and Stonebreaker violated his constitutional rights," those Defendants should be entitled to qualified immunity. *Id.* at 9.

As to Defendants Bittinger and Dunlap, the Magistrate Judge found on review of the evidence in a light most favorable to Plaintiff that genuine issues of material fact remain as to Plaintiff's due process and false imprisonment claims. ECF No. 55 at 7. The Magistrate Judge observed that the transcript of the disciplinary hearing demonstrates that Defendant Bittinger denied Plaintiff's request to call Officer Osborn on the basis that "Officer Osborn would only testify to matters that DHO Bittinger 'already knew,' namely the plaintiff's disciplinary detention status at MCI and the associated rules for an inmate's access to his legal box." The Magistrate

Judge noted that "the hearing transcript makes clear[,] [however,] that the plaintiff requested Officer Osborn's testimony concerning the condition and possible tampering of his legal box at MCI, rather than general rules or procedures." *Id.* The Magistrate Judge also noted that Plaintiff's grievance forms described Defendant Bittinger's alleged improper denial of Plaintiff's request to have Officer Osborn testify, and yet Defendant Dunlap denied the grievance on the basis that no irregularities occurred. *Id.* at 8. The Magistrate Judge determined that "prisoner due process protections, including the limited right to call witnesses in disciplinary hearings, are well-established." He further determined that Defendants Bittinger and Dunlap "denied witness testimony for no legitimate reason," which, he found, gives rise to a dispute of material fact as to whether they violated Plaintiff's constitutional rights. *Id.* at 9. Accordingly, the Magistrate Judge concluded that Defendants Bittinger and Dunlap are not entitled to qualified immunity.

Finally, with respect to the false imprisonment claim, the Magistrate Judge recommended that the dispute of material fact as to due process precludes the entry of summary judgment as to Defendants Bittinger and Dunlap because the false imprisonment claim is premised on the same allegation that Plaintiff's confinement was unlawfully extended. ECF No. 55 at 9. The Report does not address the civil conspiracy claim.

### 1. *Plaintiff's Objection*

Plaintiff objects to the Magistrate Judge's recommendation that the court dismiss Defendants Faulkenberry and Stonebreaker. ECF No. 62. Plaintiff asserts only that he has demonstrated that Defendants Faulkenberry and Stonebreaker "violated his constitutional rights," and thus they are not entitled to qualified immunity, and "material issues of fact remain as to whether the plaintiff received due process." *Id.* at 7, 8. Because Plaintiff fails to assert a specific objection, the court reviews the Report for clear error. *Diamond*, 416 F.3d at 315; Fed. R. Civ. P.

72(b). The court finds no error with the Magistrate Judge's recommendation that summary judgment be entered as to Defendants Faulkenberry and Stonebreaker on the due process and false imprisonment claims. However, for the reasons explained below, the court will not enter summary judgment for Defendants Faulkenberry and Stonebreaker on the conspiracy claim. Accordingly, the court overrules in part and sustains in part Plaintiff's objection.

2. *Defendants' Objections*

Defendants Bittinger and Dunlap object to the Magistrate Judge's recommendation that genuine issues of material fact preclude an award of summary judgment in their favor on the due process and false imprisonment claims. They further object to the finding that they are not entitled to qualified immunity. ECF No. 63.

With respect to the due process claim, Defendants argue that the record demonstrates Defendant Bittinger properly exercised his discretion in denying Plaintiff's request and that the Magistrate Judge impermissibly substituted his judgment for that of Defendant Bittinger. *Id.* at 3. For support, Defendants attach Defendant Bittinger's affidavit to their objection.[3] ECF No. 63-1. With respect to the false imprisonment claim, Defendants contend that the claim fails as a matter of law if the court agrees that Plaintiff was afforded due process. *Id.* at 5-6.

For the reasons explained below, the court finds no error with the Magistrate Judge's recommendation that genuine issues of material fact exist so as to preclude summary judgment in

---

[3] In the affidavit, Defendant Bittinger attests: [w]hen an inmate requests that a security officer be called as a witness during a disciplinary hearing and the security officer is not physically present at the correctional facility where the hearing is held, I ensure that the officer is going to offer evidence that is important and nonduplicative before calling the officer as a witness. *Id.* at 1-2. Defendant Bittinger also attests that he denied Plaintiff's request to call Officer Osborne because "(1) the request was duplicative to evidence already in the record; and (2) Plaintiff's request did not outweigh the legitimate penological interests of having Officer Osborne removed from his post and his duties of serving as a security officer." *Id.* at 2.

favor of Defendant Bittinger with respect to the due process claim. However, the court finds that Plaintiff did not allege Defendant Dunlap's personal involvement in the claimed constitutional violation, and therefore the motion for summary judgment should be granted as to Defendant Dunlap on that claim. With respect to the false imprisonment claim, the court finds that the complaint does not support a cognizable claim for false imprisonment and therefore will enter summary judgment as to Defendants Bittinger and Dunlap on that claim.[4] Accordingly, the court overrules Defendants' objection in part and sustains it in part.

## II.    Analysis

### A.    Undisputed Material Facts

The following facts appear undisputed.[5]  On March 3, 2016, at Manning Correctional Institution, Officer Osborn inventoried Plaintiff's personal property in preparation for Plaintiff's transfer to a different facility. Officer Osborn informed Plaintiff that it appeared someone had tampered with Plaintiff's legal box because the contents were out of place; Officer Osborn said he would make a note of his observation. When Plaintiff arrived at KCI, Officer Sims inventoried Plaintiff's personal property and notified Plaintiff that he had discovered a cell phone and cell phone charger in Plaintiff's legal box. Plaintiff denied that either device was his and denied having knowledge of either device. Plaintiff did not have access to his legal box between the two inventories. Plaintiff was charged with Possession of Any Communication Device (898), and set for a disciplinary hearing.

---

[4] As discussed below, Defendant Dunlap remains a party to this lawsuit with respect to the conspiracy claim.

[5] Neither party included a statement of undisputed facts in their respective motions and brief; accordingly, the court summarizes the material facts that neither party disputes.

On March 14, 2016, Plaintiff submitted a request that Officer Osborn be called to testify at the disciplinary hearing. The disciplinary hearing was held on March 16, 2016. Defendant Bittinger denied on the record Plaintiff's request to call Officer Osborn. In denying the request, Defendant Bittinger stated, among other things: "I've already looked in the computer and seen that you were on DD Stat before coming here[,] [c]an [Officer Osborn] tell me anything different from that"; "is [Officer Osborn] gonna tell me anything other than you were definitely in Lockup and your property, like all Lockups, was stored in a secure room separated from yourself"; "I know you can't have your legal box"; and "I'm aware of the policy that says you can't have your legal box in your SMU cell or your RHU cell[,] [y]ou have to ask for an individual item out of it if you need something and you need . . . to have a pending court case to do that." ECF No. 46-2 at 2-3. Defendant Bittinger then asked, "[s]o . . . can [Officer Osborn] tell me anything other than that? Because, otherwise, I don't see a reason to call Manning Correctional Institution to try to track down an officer who is just gonna tell me stuff I already know." *Id.* at 3. Defendant Bittinger found Plaintiff guilty of Possession of Any Communication Device (898) and imposed sanctions that included 60 days of disciplinary detention and the loss of 480 days of good time credit. The sanction was memorialized in the disciplinary report and hearing record. ECF No. 54-1.

In accordance with the disciplinary report and hearing record, Defendant Faulkenberry entered the sanction into the offender management system and Defendant Stonebreaker moved Plaintiff into disciplinary detention. At the time Defendants Faulkenberry and Stonebreaker enforced the disciplinary report and hearing record, Defendant Dunlap had not yet affixed his signature to it.

On March 17, 2016, Plaintiff submitted a step one grievance asserting that Defendant Bittinger deprived him of a fair hearing by denying his request for Officer Osborn to testify. ECF

No. 54-2 at 1. Defendant Dunlap responded by writing, in relevant part, "[n]o technicalities, procedural errors, or misinterpretations of evidence was noted and the decision of the Disciplinary Hearing Officer was based on the written report and verbal testimony of Officer Sims and a picture of the evidence." ECF No. 54-2 at 2. Plaintiff then submitted a step two grievance, reasserting his contention regarding the disciplinary hearing and also contending that Defendant Dunlap had not signed and/or approved the disciplinary report and hearing record. ECF No. 54-3. The step two grievance was denied. *Id.*

Thereafter, on May 31, 2016, Plaintiff filed a notice of appeal with the Administrative Law Court contesting SCDC's refusal to reverse the disciplinary conviction. ECF No. 46-4. On September 28, 2016, SCDC filed a motion to remand, stating that the Division of Operations had "elected to overturn the case due to errors in the disciplinary hearing process," and that SCDC had dismissed the disciplinary charge and restored Plaintiff's good time credits. ECF No. 54-4. The motion asked the court to remand the matter on the basis that Plaintiff had been released from SCDC custody. *Id.* Upon reversal of the conviction and dismissal of the disciplinary charge, SCDC recalculated Plaintiff's sentence maxout date to July 30, 2016. *Id.* Plaintiff was released on September 28, 2016. ECF No. 46-9 at 2. On October 18, 2016, the Administrative Law Court dismissed Plaintiff's appeal. ECF No. 54-5.

**B.  Due Process**

1.  *Applicable Law*

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. *Baker v. McCollan*, 443 U.S. 137, 145 (1979). A prisoner who continues to be incarcerated after the termination of his sentence is potentially deprived of his rights under the

Fourteenth Amendment. *Golson v. Department of Corrections*, 914 F.2d 1491, 1 (4th Cir. 1990) (Table).

Plaintiff asserts a violation of his Fourteenth Amendment right to due process pursuant to 42 U.S.C. § 1983, which allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights"; it merely provides "a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To assert a claim under section 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. 42 U.S.C. § 1983. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). Liability in a section 1983 suit lies only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1948 (2009) (holding that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*") (citation omitted).

In their motion for summary judgment, Defendants assert entitlement to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts qualified immunity, the court must determine whether plaintiff has alleged or shown the violation of a constitutional right, and whether the right

at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194 (2001). The district court acts in its discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

### 2. *Application*

The due process violation at issue here is the alleged denial of a fair and adequate disciplinary hearing.[6] To recover under the Due Process Clause, a plaintiff must establish that "defendants acted with something more than mere negligence." *Golson*, 914 F.2d at 1. Prisoners may not be deprived of life, liberty, or property without due process of law, but such rights are subject to restrictions "imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.* at 560.

To that end, the *Wolff* Court held that an inmate facing disciplinary proceedings is entitled to the following due process protections: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence "when doing so will

---

[6] As the Magistrate Judge noted in his Report, the complaint appears to assert that Defendant Bittinger improperly delayed delivering the disciplinary report and hearing record to Plaintiff. ECF No. 1 at 5. No party addresses this theory in briefing the motions for summary judgment or in objecting to the Report. The Magistrate Judge declined to address the theory in the Report, ECF No. 55 at 4 n.3, and the court will not address it at this time.

not be unduly hazardous to institutional safety or correctional goals"; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *Id.* at 564-71. With respect to when an inmate may call witnesses and present evidence, the Court explained:

> It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case

*Id.* at 566. *See Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004) (discussing *Wolff*). *See also Sandin v. Conner*, 515 U.S. 472, 478 (1995) (advising that "[m]uch of *Wolff* 's contribution to the landscape of prisoners' due process derived not from its description of liberty interests, but rather from its intricate balancing of prison management concerns with prisoners' liberty in determining the amount of process due").

In *Ponte v. Real*, the Supreme Court further explained that "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify," but "so long as the reasons are logically related to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." 471 U.S. 491, 497 (1985). Of note, the *Ponte* court declined to "place the burden of proof on the inmate to show why the action of the prison officials in refusing to call witnesses was arbitrary or capricious." *Id.* at 499. Courts have subsequently interpreted *Ponte* as clarifying that "the burden of persuasion as to the existence and sufficiency of such institutional concerns [justifying the denial of an inmate's request to call

witnesses] is borne by the prison officials, not by the prisoners." *Smith v. Massachusetts Dept. of Correction,* 936 F.2d 1390, 1399–1400 (1st Cir. 1991) (quoting *Grandison v. Cuyler,* 774 F.2d 598, 604 (3d Cir. 1985) (modification in *Smith*). *See King-Fields v. Leggett*, No. ELH–11–1491, 2014 WL 694969, at *19 (D. Md. Feb. 19, 2014).

Defendants offered into evidence a transcript of the disciplinary hearing. ECF No. 46-2. The transcript reflects that Defendant Bittinger declined to call Officer Osborn on the basis that Officer Osborn would testify only to matters that Defendant Bittinger already knew, such as Plaintiff's disciplinary detention status at Manning Correctional Institution and SCDC's rules for an inmate's access to his legal box. ECF No. 46-2 at 3. Defendant Bittinger did not articulate a security concern, or any other concern, as the basis for declining to call Officer Osborn.[7] Moreover, as the Magistrate Judge notes, the transcript of the disciplinary hearing demonstrates that Plaintiff expected that Officer Osborn would testify not about general SCDC rules and procedures, but about the tampering with and condition of Plaintiff's legal box. ECF No. 46-2 at 2, 6 ("That's why I asked to have Officer Osborn here to verify that. I didn't access [sic] to my box or the box wasn't concealed"; "That's why I wanted Mr. Osborn here . . . . [w]hen he brought my box and my property, [] my box was not taped . . ."). The governing case law makes clear that

_____

[7] In the affidavit attached to Defendants' objection, Defendant Bittinger attests for the first time that he denied Plaintiff's request on the basis of a legitimate penological interest. ECF No. 63-1. The court exercises its discretion in determining whether to consider Defendants' new evidence as part of the review of the Magistrate Judge's Report. 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72(b)(2); *see also Doe v. Chao,* 306 F.3d 170, 183 n.9 (4th Cir. 2002) ("[T]he question of whether to consider such evidence rests within the sound discretion of the district court."). The court declines to consider the affidavit, considering that it was filed after briefing on the motion for summary judgment concluded and the Magistrate Judge had issued his Report, and after Plaintiff had filed his objection to the Report. Defendants provide no explanation as to why they were unable to offer the affidavit at the time they filed their motion. In any event, the affidavit does not resolve the genuine issue of material fact clouding the matter. As noted above, the transcript of the disciplinary hearing reflects that Defendant Bittinger did not cite safety concerns as a reason for denying Plaintiff's request; accordingly, his affidavit conflicts with the transcript.

a corrections officer may exercise his or her discretion in declining an inmate's request to present witnesses or introduce evidence, but within certain parameters.[8]  The record raises a question of material fact as to whether Defendant Bittinger denied Plaintiff's request to call Officer Osborn on the basis of a legitimate penological interest, which would constitute a proper exercise of discretion, or whether the denial of Plaintiff's request was arbitrary.  *See Wolff*, 418 U.S. at 558 ("The touchstone of due process is protection of the individual against arbitrary action of government").  The record also indicates that any due process violation resulting from Defendant Bittinger's conduct was not the result of mere negligence.

The court is equally unpersuaded that Plaintiff received all the due process to which he was entitled simply because his administrative appeal was successful.  As the Magistrate Judge found, the case law Defendants cite for support of their argument involves inmates who were not eligible for release even after the restoration of the good time credits.[9]  Defendants do not dispute that Plaintiff would have been released in July 2016 but for the loss of good time credits.  ECF No. 46-9 (attesting that "[u]pon the voluntary reversal of the disciplinary conviction by SCDC, Plaintiff's sentence maxout date was recalculated to July 30, 2016, resulting in his release from SCDC as soon as was feasibly possible on September 28, 2016").  The Court in *Wolff* recognized that States may under certain circumstances create liberty interests that are protected by the Due Process Clause.  The Court subsequently clarified in *Sandin* that those liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

---

[8]  The record before the court does not include SCDC regulations or policies regarding how corrections officers handle requests for witness testimony.

[9]  Defendants do not contest this finding in their objection.  ECF No. 63 at 1-5.

prison life." *Sandin*, 515 U.S. at 483, 487 (noting that the plaintiff's situation did not "present a case where the State's action will inevitably affect the duration of his sentence"). At a minimum, there is a genuine dispute of material fact as to whether extending Plaintiff's confinement in SCDC custody for 89 days constitutes atypical and significant hardship. *Cf. Walker v. Bates*, 23 F.3d 652, 657 (2d Cir. 1994) (holding that "[o]nce a cause of action for a constitutional violation accrues, nothing that the state does subsequently can cut off the § 1983 action . . . [t]he constitutional violation . . . obviously occurred when the penalty was imposed in violation of state law and due process requirements. Administrative appeal, whether successful or not, cannot cut off the cause of action any more than can a proceeding brought in the state courts to vacate the penalty imposed and vindicate the prisoner's rights") (quoting *Patterson v. Coughlin,* 761 F.2d 886, 893 (2d Cir. 1985), *cert. denied,* 474 U.S. 1100 (1986)).

For these reasons, the court finds that a rational trier of fact could determine that Defendant Bittinger acted arbitrarily in denying Plaintiff's request to call Officer Osborn, and therefore violated Plaintiff's right to due process. *Cf. Crawford v. Hunt*, 8:15-01362-MGL, 2016 WL 4232885, at *3 (D.S.C. Aug. 11, 2016) (denying defendant Edward Bittinger's motion for summary judgment on claim for due process violation arising from disciplinary hearing, finding "a genuine issue of material fact as to whether there was a legitimate penological interest for refusing Plaintiff's requested witness"). The constitutional right at issue is clearly established, *see, e.g., Brown*, 373 F.3d at 505 ("after *Wolff,* it was clearly established that prison officials had the discretion to deny witness requests, where legitimate penological interests justified excluding a witness"); and Defendants do not argue otherwise. Accordingly, Defendant Bittinger is not entitled to qualified immunity on the due process claim and his objection to the Report is overruled.

With respect to Defendants Faulkenberry and Stonebreaker, the Magistrate Judge found that neither Defendant "played a role in arriving at the sanction, and their ministerial actions do not amount to due process violations . . . ." ECF No. 55 at 6. The court agrees. The due process claim is brought pursuant to section 1983 and cannot lie against any Defendant who did not personally participate in the alleged deprivation, and the allegations against Defendants Faulkenberry and Stonebreaker are limited to their participation in administrative tasks that were executed after the disciplinary hearing was held.[10] Plaintiff's objection to this finding is overruled and the court will enter summary judgment on this claim as to Defendants Faulkenberry and Stonebreaker.

Finally, the Magistrate Judge found that genuine issues of material fact exist with respect to the due process claim as it pertains to Defendant Dunlap. The Magistrate Judge based his recommendation on the fact that Defendant Dunlap denied Plaintiff's grievances, which described Defendant Bittinger's decision to deny Plaintiff's request to call Officer Osborn. ECF No. 55 at 8. Generally, a prison official's denial of a grievance is insufficient to form the basis of a section 1983 claim because prisoners do not have a constitutional right of access to the grievance process. *Daye v. Rubenstein*, 417 Fed. Appx. 317, 319 (4th Cir. 2011) (citing *Adams v. Rice*, 40

---

[10] The court does not interpret the complaint as asserting that a due process violation resulted from Defendants Faulkenberry and Stonebreaker's failure to adhere to SCDC policy requiring that a disciplinary order be signed by the warden; nor would such an assertion constitute a colorable claim. *See Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Moreover, it is not clear that SCDC policy requires the warden to sign the disciplinary order. Plaintiff quotes the relevant policy as follows: "when the inmate is found guilty, the warden or his/her designee at the institution where the inmate is housed may approve hearing results, overturn a guilty finding, or reduce the sanction of the hearing officer." ECF No. 1 at 6.

F.3d 72, 75 (4th Cir. 1994)). *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983") (citing *Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002); *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Taylor v. Pate,* No. 2:16-cv-2115-RMG-MGB, 2016 WL 8201060, at *5-6 (D.S.C. Nov. 15, 2016). As with Defendants Faulkenberry and Stonebreaker, there are no allegations that Defendant Dunlap personally participated in the alleged deprivation. Defendant Dunlap did not preside over the disciplinary hearing and there is no allegation that he knew of Plaintiff's request for Officer Osborn's testimony such that he was in a position to approve or deny the request. The transcript of the hearing reflects that Defendant Bittinger alone denied Plaintiff's request and determined what sanction to impose. Indeed, Plaintiff alleges that Defendant Dunlap did not approve the sanction, in that he did not sign the disciplinary report and hearing record. ECF No. 1 at 7. The allegations implicating Defendant Dunlap are limited to his denial of the grievances, which cannot support section 1983 liability for a due process violation.[11] Accordingly, Defendants' objection as to this issue is sustained and the court will enter summary judgment in favor of Defendant Dunlap on the due process claim.

## C. False Imprisonment

Plaintiff alleges that Defendant Bittinger imposed the sanctions that resulted in Plaintiff's extended confinement, and that Defendant Dunlap upheld those sanctions on the basis that Plaintiff had received sufficient due process. Plaintiff additionally alleges that Defendant Faulkenberry

---

[11] The court makes no finding as to whether these allegations could support the violation of a state law claim.

entered the sanctions into the offender management system, and that Defendant Stonebreaker placed him in KCI's restrictive housing unit. ECF No. 1 at 6, 7. The Magistrate Judge found that all claims should be dismissed as to Defendants Stonebreaker and Faulkenberry because their alleged participation in the claimed wrongful conduct is ministerial in nature and does not give rise to a constitutional violation. ECF No. 55 at 6. The Magistrate Judge found that the false imprisonment claim should go forward as to Defendants Bittinger and Dunlap in light of the genuine issues of material fact with respect to Plaintiff's due process claim. *Id.* at 9.

The court construes the claim for false imprisonment as arising under section 1983, as opposed to state law. *See, e.g.,* ECF No. 1 at 1, 7 (asserting that jurisdiction is appropriate under 28 U.S.C. § 1331, and that "[a] false arrest violates federal law (the Fourth Amendment of the United States Constitution as enforced through 41 U.S.C. § 1983)"). A section 1983 claim for false imprisonment requires a plaintiff to establish (1) the common law elements of false imprisonment,[12] and (2) a Fourteenth Amendment due process violation. *See Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir. 2009). Accordingly, only Defendant Bittinger can be held liable under this theory of false imprisonment because the other Defendants are entitled to summary judgment on the only constitutional deprivation herein at issue.

A section 1983 claim for false imprisonment serves to address detention "without legal process," rather than detention resulting from inadequate process. *Wallace v. Kato,* 549 U.S. 384, 389, 390 (2007) (instructing that "[i]f there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point

---

[12] In South Carolina, a cause of action for false imprisonment requires a showing that "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (quoting *Caldwell v. K–Mart Corp.,* 410 S.E.2d 21, 23 (S.C. App. 1991)).

on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."). It is undisputed that Plaintiff was convicted and sanctioned pursuant to a legal process, i.e., the disciplinary hearing, subject to review by the Administrative Law Court. *See Titsworth v. Oklahoma Dept. of Corrections*, 561 Fed. Appx. 746, 747 (10th Cir. 2014) (reviewing appeal of former prisoner who argued he was entitled to enhanced time credits that would have resulted in earlier release, advising that appellant's continued incarceration would not constitute "false imprisonment" if it was based on legal process, observing that appellant challenged the denial of credits through habeas proceedings, and that "even if the imprisonment had earlier been wrongful, it was indisputably based on legal process once [the court] considered [appellant's] habeas claim regarding the denial of credits"). *Cf. McCurry v. Moore*, 242 F. Supp. 2d 1167, (N.D. Fla. 2002) (finding genuine issues of material fact as to false imprisonment claim where former inmate alleged defendants incorrectly read the sentencing documents and extended plaintiff's incarceration beyond the expiration of his sentence); *Campbell*, 586 F.3d at 840-42 (finding genuine issues of material fact as to false imprisonment claim where former detainee alleged the sheriff directed jail not to accept certain property in satisfaction of bail bond). The disciplinary hearing was indisputably blighted by irregularities, but constitutes a legal process nonetheless. Therefore, Plaintiff fails to state a claim for false imprisonment under section 1983; and Plaintiff cannot prevail on summary judgment or at trial without having first stated a claim actionable under law. Accordingly, Defendants' objection regarding this claim is sustained.

### D. Conspiracy

The complaint asserts that all Defendants are liable for conspiracy pursuant to 42 U.S.C. § 1985(3). ECF No. 1 at 1. Section 1985(3) states:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiff alleges that Defendants Stonebreaker and Faulkenberry conspired to deprive him of his due process rights in that they enforced the sanctions despite the fact that Defendant Dunlap had not signed the disciplinary report and hearing record. ECF No. 1 at 6, 7. Plaintiff alleges that Defendant Dunlap and Defendant Bittinger conspired "to deprive the Plaintiff of his constitutional rights," by denying Plaintiff "a fair and fundamental hearing in a manner that ensure[s] Plaintiff adequate 'Due Process protection.'" *Id.* at 8. Defendants argue simply that the court should decline to exercise supplemental jurisdiction over the claim. ECF No. 46-1 at 16. However, Plaintiff plainly asserts the conspiracy claim pursuant to federal law, not state law, ECF No. 1 at 1 (asserting "conspiracy 42 USCA § 1985(3)"); accordingly, the court's jurisdiction over this claim is not discretionary.

The court notes the scarcity of allegations in the complaint supporting a claim for conspiracy under section 1985(3). However, Defendants did not present substantive arguments on the conspiracy claim in their motion for summary judgment, and the Magistrate Judge did not address the conspiracy claim in his Report. While the court may enter summary judgment "on grounds not raised by a party," it may do so only after giving notice to the parties along with a reasonable time to respond. Fed. R. Civ. P. 56(f). In light of the ruling on the due process claim, the court declines to enter summary judgment in Defendants' favor based on arguments they did not raise and which the parties have not briefed.

Finally, in consideration of the nature and posture of this case, the court is inclined to appoint counsel to represent Plaintiff on a pro bono basis. 28 U.S.C. § 1915(e)(1) (authorizing the court discretion to appoint counsel for an indigent litigant in a civil action); *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971). *See Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984) (explaining that whether appointment of counsel in a civil action is appropriate depends on the type and complexity of the case, and the litigant's ability to prosecute it), *abrogated on other grounds by Mallard v. United States Dist. Court for S. Dist. of Iowa,* 490 U.S. 296 (1989). Accordingly, on or before March 29, 2019, Plaintiff shall inform the court in writing as to whether he wishes the court to appoint him pro bono counsel. Plaintiff is advised that there is no guarantee that counsel will be appointed; rather, appointment is dependent on the court's success in finding an attorney willing to undertake such representation.

## CONCLUSION

The court adopts the Report and Recommendation in part and declines to adopt in part, as described herein. Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted in part as follows: summary judgment will enter for Defendants Dunlap, Stonebreaker, and Faulkenberry on the due process and false imprisonment claims, and will enter for Defendant Bittinger on the false imprisonment claim. Defendants' motion for summary judgment is otherwise denied.

**IT IS SO ORDERED.**


Dated: March 13, 2019                    /s/Margaret B. Seymour_____
Columbia, South Carolina               Margaret B. Seymour
                                        Senior United States District Judge